U`ITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LORI DENNIS,

      Plaintiff,

      v.                                                                Case No. 3:20-CV-77 JD

ANDREW M. SAUL, Commissioner of
Social Security,

      Defendant.

## OPINION AND ORDER

Plaintiff Lori Dennis applied for disability benefits in 2016 alleging she was unable to

work because of neck and spinal problems that caused constant headaches, pain, and limited

mobility. An Administrative Law Judge ("ALJ") found that Ms. Dennis retained the capacity to

perform sedentary work with certain mobility limitations and therefore denied her application.

For the reasons set forth below, the Court reverses the Commissioner's decision and remands for

further proceedings.

**I. Factual Background**

Ms. Dennis filed an application for disability insurance benefits claiming a disability

onset date of September 13, 2016. (R. 67, 156–57.) Her application was initially denied then

denied again upon reconsideration. (R. 10.) An ALJ held an administrative hearing on the

application on November 13, 2018, and heard testimony from Ms. Dennis, who was represented

by counsel. *Id.* Following the hearing, the ALJ found that Ms. Dennis had several medically

determinable impairments that could reasonably be expected to cause hardships at work but that

she had a residual functional capacity ("RFC") that allowed her to perform sedentary work with

some mobility limitations and thus was not disabled within the meaning of the Social Security Act. (R. 15); *See* 20 C.F.R. 404.1520(f). The Appeals Council subsequently denied review of the ALJ's decision, making the ALJ's decision the final determination of the Commissioner. (R. 1–6); *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Ms. Dennis appeals the final determination to this Court under 42 U.S.C. §405(g).

Ms. Dennis's application arises from what she argues are severe impairments from cervical spine disorder, scoliosis, and lumbar spondylosis. (DE 7 at 3.) She claims these and other conditions led her to be disabled within the meaning of the Social Security Act starting on September 13, 2016, when she had to stop working as a hair stylist because of severe headaches. (R. 10, 41.) She alleges that her conditions impact her ability to move her head, walk, stand, and sit for extended periods of time. (R. 45, 47.)

Ms. Dennis's relevant medical history for her disability claim begins on August 3, 2016, and stretches through the time of the ALJ hearing in November 2018. Ms. Dennis saw a doctor in August 2016 because she was experiencing increased neck pain. Testing completed during the appointment showed evidence that she had had several prior cervical fusion surgeries. (R. 266, 283.) The doctor diagnosed Ms. Dennis with, among other things, neck muscle spasms and neck pain and prescribed several medications to relieve her pain and headaches. (R. 285–86.) Ms. Dennis also saw Dr. John Arbuckle, a pain specialist, around this time and received several injections into her spine designed to provide her with pain relief. (R. 408–10.)

She continued to see Dr. Arbuckle periodically for the remainder of 2016 and into the beginning of 2017. She underwent several procedures with him during that time, primarily injections in the area around her spine but also at least one procedure to numb some of the nerves in her spine. (R. 279, 411, 415–17.) Ms. Dennis continued to complain of pain and headaches

despite the numerous treatments. (R. 279, 308, 416–17.) A state agency medical consultant, Dr.

Michael Brill, reviewed Ms. Dennis's medical history while she was undergoing the treatments

and concluded that she could perform a reduced range of light work. (R. 62–64.)

Ms. Dennis' treatment continued in February 2017 with an MRI (R. 366) and more

appointments with Dr. Arbuckle to discuss her ongoing difficulties with pain and headaches. The

MRI revealed narrowed openings between the bones in her spine, which can cause nerve pain,

and led to more treatment with selective nerve injections. (R. 312.) At this point, Ms. Dennis was

still complaining of pain and headaches but was exhibiting both a normal range of motion other

than in her cervical spine and a normal walking gait. (R. 281, 285.) When the new round of nerve

injections still did not help the pain, Dr. Arbuckle ordered a bone scan that revealed problematic

changes in the spine and the presence of osteoporosis. (R. 370, 372–73.) In response to these

findings, Ms. Dennis underwent a procedure in April 2017 on her C4 vertebrae. The surgery was

designed to decompress her spine and allow pain relief. (R. 320, 332–34.) Ms. Dennis benefitted

from the procedure as documented in follow-up appointments, reporting that her pre-operative

complaints had significantly improved, she had a normal range of motion, and a normal walking

gait. (R. 327–29, 339, 441–43.) It was during this period of improvement, specifically in June

2017, that the second state agency medical consultant, Dr. Fernando Montoya, reviewed the

medical record and concluded that Ms. Dennis could perform a reduced range of light work. (R.

78–81.)

Approximately a year after her surgery, however, Ms. Dennis started telling Dr. Arbuckle

she was experiencing pre-operative levels of pain and headaches again. (R. 403–04.) Dr.

Arbuckle treated her with more injections and nerve numbing from the time she first reported the

return of the headaches and pain in April 2018 through July 2018. (R. 395–400.) Dr. Arbuckle

then completed a treating source report in August 2018 in which he concluded that Ms. Dennis

could not perform even sedentary work, partly because of her frequent and severe pain but also

because she would have to miss more than four days of work per month. (R. 465.) Ms. Dennis

underwent a functional capacity evaluation in October 2018 with an occupational therapist where

she demonstrated she could lift up to twenty pounds frequently and ten pounds constantly, but

that she could not reach overhead or forward or move her head on a sustained basis. (R. 466.)

Having been presented with the medical evidence and hearing Ms. Dennis's testimony

about her limitations during a scheduled hearing, the ALJ assigned the following RFC:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform sedentary work as
> defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ramps
> and stairs; the claimant cannot climb ladders, ropes or scaffolds; the claimant can
> occasionally stoop, kneel, crawl, and crouch; the claimant must avoid exposure to
> unprotected heights and hazardous machinery; and the claimant can occasionally
> reach overhead bilaterally.

(R. 15.) Based on the testimony of a vocational expert and the assigned RFC, the ALJ found Ms.

Dennis capable of working in the national economy.

## II. Standard of Review

Because the Appeals Council denied review of the ALJ's decision, the Court evaluates

the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas*, 732 F.3d

at 707. This Court will affirm the Commissioner's findings of fact and denial of disability

benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th

Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v.*

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about

the disability status of the claimant, the Court must affirm the Commissioner's decision as long

as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial evidence determination, the Court considers the entire administrative

record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or

substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v.*

*Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the

record to ensure that the ALJ's decision is supported by the evidence and contains an adequate

discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as

well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence

that is contrary to his findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ

must also "articulate at some minimal level his analysis of the evidence" to permit informed

review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or

testimony presented, he must provide a "logical bridge" between the evidence and his

conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).


**III. Standard for Disability**

Disability benefits are available only to individuals who are disabled under the terms of

the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled

if he or she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423 (d)(1)(A). The Social Security regulations contain a five-step test to ascertain

whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4). These steps require

the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

20 C.F.R. § 404.1520(a)(4); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step

three, if the ALJ determines that the claimant's impairment or combination of impairments meets

or equals an impairment listed in the regulations, the Commissioner acknowledges disability. 20

C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, the ALJ must assess the

claimant's RFC between steps three and four. The RFC is then used to determine whether the

claimant can perform past work under step four and whether the claimant can perform other

work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in

steps one through four, while the burden shifts to the Commissioner at step five to show that

there are a significant number of jobs in the national economy that the claimant can perform.

*Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).


**IV. Discussion**

Ms. Dennis offers two arguments in support of reversal. First, she argues the ALJ failed

to properly weigh the medical opinion evidence in determining her RFC by discounting the

opinion of Ms. Dennis's treating physician, Dr. John Arbuckle, while giving substantial weight

to the opinions of two non-treating agency consultants. (DE 7 at 4.) Second, she argues the ALJ

6

failed to properly evaluate her subjective statements about her condition that she made during her

hearing before the ALJ. (*Id.* at 9.) The Court only addresses the first argument, as the Court

agrees that the ALJ erred in evaluating the medical opinion evidence. The parties can address

any remaining arguments on remand.

A treating physician's opinion on the nature and severity of an impairment is given

controlling weight if it "is well-supported by medically acceptable clinical laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] case record." 20

C.F.R. § 404.1527(c); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).[1] An ALJ "must offer

'good reasons' for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d

299, 306 (citing 20 C.F.R. § 404.1527(d)(2)) (other citations omitted). If the ALJ does not give

the treating physician's opinion controlling weight, the ALJ applies the factors set forth in 20

C.F.R. § 404.1527(c)(1)–(6) to determine the weight to give the opinion. *Yurt v. Colvin*, 758 F.3d

850, 860 (7th Cir. 2014). The factors are: the physician's examining relationship with the

plaintiff; the physician's treatment relationship with the plaintiff; the supportability of the

physician's opinion by relevant evidence; the consistency of the medical opinion with the record

as a whole; the physician's specialty; and any other factors tending to support or refute the

opinion. *See* 20 C.F.R. § 404.1527(c); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). If the

ALJ discounts the treating physician's opinion after considering the factors, the Court must give

deference to the ALJ's decision so long as he "minimally articulate[d] his reasons. *Elder*, 529

F.3d at 415.

---

[1] While the treating physician rule has since been rescinded, it still applies to claims filed before March 27, 2017. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). Ms. Dennis filed her disability claim in October 2016.

Dr. Arbuckle is a licensed anesthesiologist and pain specialist who treated Ms. Dennis

consistently between August 2016 and October 2018. (R. 308–326, 465.) He completed a

treating source statement on August 28, 2018 that detailed Ms. Dennis's conditions and the

limitations they caused on her ability to work and function. (R. 465.) In that statement, Dr.

Arbuckle opined that Ms. Dennis could stand, walk, and sit for fewer than fifteen minutes at a

time and fewer than sixty minutes in a full workday. He also opined that she could only lift five

pounds on an occasional basis and fewer than five pounds on a frequent basis. Dr. Arbuckle

added that Ms. Dennis could only bend, stoop, and balance occasionally and suffered from

frequent and severe pain that was enough to interfere with attention and concentration. He

concluded his statement with the determination that if Ms. Dennis was employed, she would

have to miss more than four days of work per month. (*Id.*)

The ALJ's decision to afford "limited weight" to Dr. Arbuckle's treating source

statement does not meet the level of analysis required under 20 C.F.R. § 404.1527(c). When an

ALJ decides against giving a treating physician's opinion controlling weight, the ALJ is required

to consider the length, nature, and extent of the treatment relationship, frequency of examination,

the physician's specialty, the types of tests performed, and the consistency and supportability of

the physician's opinion. 20 C.F.R. § 404.1527(c). The ALJ largely did not address those

considerations. (R. 17–18.) There is no mention outside of referring to Dr. Arbuckle as Ms.

Dennis's "treatment provider" (R. 17) that Dr. Arbuckle met regularly with Ms. Dennis over the

time period in question or that all of the appointments were focused on the pain Ms. Dennis

experienced because of her spinal issues. The ALJ also does not mention that Dr. Arbuckle

specialized in treating pain like Ms. Dennis's and that imaging from appointments with Dr.

Arbuckle and others clearly supported the serious spinal problems on which Dr. Arbuckle

8

centered his treating source opinion. Instead, the ALJ only briefly compared Dr. Arbuckle's opinion to the other medical evidence, stating the other medical evidence showed Ms. Dennis "appeared to have a stable symptomology," a normal gait, a normal range of motion aside from her cervical spine, and well-positioned hardware from various surgeries. (R. 17–18, 281, 285.) The ALJ's focus only on the other medical evidence to the exclusion of any other § 404.1527(c) factor leaves the Court to speculate whether she considered any of the other factors at all.

The Commissioner does not help the Court to shed light on what factors the ALJ might have considered before discounting the treating source opinion. Instead, the Commissioner relies primarily on the argument that "there is no requirement that the [ALJ] explicitly mention each factor in the written decision," *see Elder*, 529 F.3d at 415–16, before rehashing the ALJ's observations about stable symptomology, normal gait, and good hardware position. (DE 9 at 4.) The Commissioner also problematically adds reasons for the ALJ's weighting of Dr. Arbuckle's opinion that the ALJ explicitly did not use, namely an October 2018 functional capacity evaluation that the ALJ gave "limited weight" (R. 18) and the fact that Dr. Arbuckle completed the treating source form by circling answers on a preprinted sheet of paper, which the ALJ never mentioned. (DE 9 at 4–5.) While it may be true that the ALJ need not explicitly mention all the factors to determine the weight given a treating source statement, only discussing one of the factors while appearing to ignore the rest leads the Court to conclude the ALJ failed to minimally articulate her reasons for assigning the treating physician statement "limited weight." The ALJ's decision is thus inadequate and requires remand.

Remand is also required, however, because the ALJ's conclusions about the medical evidence as a whole are not supported by substantial evidence. To meet the substantial evidence standard, the Seventh Circuit requires that an ALJ create a "logical bridge" between the evidence

in the record and the ALJ's conclusion. *Terry*, 580 F.3d at 475. The ALJ based her decision on her observations that Ms. Dennis had stable symptomology, normal gait, and good hardware position after the April 2017 surgery as well as the opinions of two non-examining consultants. (R. 17–18.) While all the evidence the ALJ cites is accurate, it gives an incomplete picture of Ms. Dennis's conditions and her ongoing struggle with them, particularly after her April 2017 spinal surgery.

The ALJ did comprehensively detail Ms. Dennis's appointments, symptoms, and difficulties with her spinal conditions between August 2016 and roughly April 2018. Diagnostic testing from August 2016 through March 2017 showed evidence of prior spinal fusions at which time Ms. Dennis was complaining of neck pain and headaches and receiving medication to combat those symptoms. (R. 16–17, 266, 272, 281, 309.) The ALJ also took note of Ms. Dennis's restricted range of motion in her cervical spine during that time period (R. 275–302) as well as the pain-related injection treatments she received that either did not work or only provided short periods of relief (R. 16–17, 279, 309, 312, 315, 318). The decision also correctly notes Ms. Dennis appeared to start turning a corner after surgery in April 2017 on her C4 vertebrate. (R. 321, 332–34.) Following that surgery, Ms. Dennis was alert, not in acute distress, was healing well, maintained a normal gait, and repeatedly reported that her pre-operative complaints about neck pain and headaches had significantly improved. (R. 328–29, 340.) Her hardware was also in good alignment during these appointments. (R. 403.) The problem comes, however, with the fact that the ALJ based her decision on these positive, post-surgery traits and reports about Ms. Dennis's symptoms without explaining why that information supported her ultimate decision and without accounting for other evidence that undermines the initial, positive reports.

First, the ALJ's mention of Ms. Dennis's normal gait, stable conditions, and good alignment of her surgical hardware does not on its own amount to substantial evidence that Ms. Dennis could perform above Dr. Arbuckle's expectations. The principal problem is that the ALJ never took the extra step to draw a connection explaining how the presence of those positive traits meant that Ms. Dennis was no longer suffering from the neck pain and headaches that primarily underly the disability claim. (R. 17–18.) The lack of explanation is troublesome in part because Ms. Dennis displayed the same positive traits the ALJ mentions before the April 2017 surgery but still elected to have the surgery because she was experiencing severe enough neck pain and headaches to warrant it. (R. 281, 285.)  Further, the ALJ's emphasis on Ms. Dennis's stable condition holds little weight because a stable condition does not necessarily mean an individual is able to work and perform daily functions. *See Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1081 (W.D. Wis. 2008) ("[A] person can have a condition that is both 'stable' and disabling at the same time."). The ALJ did not grapple with these issues or provide clear connections between the traits and the headaches and neck pain and that lack of explanation keeps the Court from finding the ALJ has created the required logical bridge to have supported her conclusion.

Second, the ALJ's additional reliance on the improvements Ms. Dennis experienced to her neck pain and headaches after surgery (R. 18) is misleading because the ALJ left key facts unmentioned that undermine such reliance. In making a proper RFC determination, "an ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted). Importantly, when the ALJ quoted Ms. Dennis as saying in April 2018 that her "preoperative pain complaints had

11

almost completely resolved," (R. 17), the ALJ cherry-picked words from the sentence, which

reads in full that "her preoperative pain complaints had almost completely resolved *until*

*approximately 2 months ago*" (R. 403) (emphasis added). Ms. Dennis also stated in that April

2018 appointment that while some of her pain was infrequent and tolerable, "her neck pain rather

bothers her constantly and she finds [it] intolerable." (*Id.*) The ALJ does not address those

statements. She also never addresses that, following Ms. Dennis's statement in the April 2018

appointment, Ms. Dennis received injections to address the pain from Dr. Arbuckle in a

subsequent April appointment (R. 443) and went on to receive more injections from Dr.

Arbuckle in May and July as well as a further nerve-numbing procedure in July (R. 395–400.) It

was after these additional appointments, which undermine the ALJ's conclusion by showing Ms.

Dennis was regressing to pre-surgery conditions of pain, that Dr. Arbuckle came to his

conclusions reflected in his August 2018 treating source opinion. The ALJ's decision not to

address the contradictory evidence despite it being available to her in November 2018 and

instead end her analysis prematurely with the earlier, positive post-surgery reports lands her short

of the logical bridge requirement and substantial evidence burden.

Further troublesome is that the ALJ came to her decision after assigning "considerable

weight" to the opinions of two non-examining agency consultants. She did so on the basis of

what she concluded were the consultants' careful considerations of Ms. Dennis's condition

grounded in the evidence of the record. (R. 18.) The existence of a contradictory opinion of a

non-examining physician does not overcome the opinion of a treating physician, like Dr.

Arbuckle. *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). And the ALJ does not cite

to the specific evidence that the consultants supposedly relied on that she found to be so

compelling. *See Czarnecki v. Colvin*, 595 F. App'x 635, 644 (7th Cir. 2015). Additionally,

12

neither of the consultants was working with the full record when they conducted their reviews of the medical evidence. The first consultant, Dr. Michael Brill, reviewed Ms. Dennis's claim in January 2017, and the second consultant, Dr. Fernando Montoya, reviewed Ms. Dennis's claim in June 2017. (R. 62–64, 78–81.) Dr. Brill's review thus came early in the course of treatment relevant to the ALJ's decision and Dr. Montoya's review came just as Ms. Dennis was seeing the most positive results from her April 2017 surgery. The ALJ does acknowledge there was some incompleteness in the record at the time of the consultants' examinations, but she does not adequately explain why these two incomplete consultant opinions deserve more weight than the opinion of Dr. Arbuckle, who treated Ms. Dennis over the entire course of the relevant time period. The ALJ's unsupported reliance on the consultants' opinions instead of Dr. Arbuckle's is thus another reason why her decision does not meet the substantial evidence requirement.

Because the ALJ failed to properly weigh the medical opinion evidence of Ms. Dennis's treating physician, and because the ALJ did not adequately explain her conclusions, harmful error occurred, and remand is therefore required. The Court recognizes that the RFC is a legal determination made by the ALJ, not a medical determination. However, the ALJ must consider all the relevant evidence in the record and evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection. *Golembiewski*, 322 F.3d at 917; *Zurawski*, 245 F.3d at 888. The Court also recognizes that an ALJ need only minimally articulate her justification for accepting or rejecting specific evidence of disability. *Berger*, 516 F.3d at 545; *Rice*, 384 F.3d at 371. But here, the ALJ's decision cannot stand because it lacks the required substantial evidentiary support and an adequate discussion of the issues. *See Lopez*, 336 F.3d at 539.


**V. Conclusion**


13

14

The remedy for the ALJ's shortcomings is further consideration, not the immediate award of benefits. And so, for the reasons stated herein, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: February 4, 2021

/s/ JON E. DEGUILIO
Chief Judge
United States District Court